IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1)   KASIE STAMBAUGH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-16-1452-W |
| | ) | |
| (1)   STATE OF OKLAHOMA, ex. rel. OKLAHOMA WATER RESOURCES BOARD, a statutory state agency, | ) ) ) ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Kasie Stambaugh ("Plaintiff"), for her causes of action against Defendant State of Oklahoma ("Defendant"), alleges and states:

## The Parties

1. At all relevant times, Plaintiff was and now is a resident of the City of Wellston, Lincoln County, State of Oklahoma.

2. At all relevant times, Defendant was, and now is, a statutory state agency with offices in, and operating in, the City of Oklahoma City, Oklahoma County, State of Oklahoma.

## Jurisdiction and Venue

3. This Court has jurisdiction over the subject matter of this Complaint pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 2000e-5.

4. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(b).

## Fact Allegations

5. Plaintiff began her employment with Defendant around May 2014 in the flood plains and water-well drilling management department. At the time of her termination, Plaintiff was no longer a temporary employee with Defendant.

6. Plaintiff's supervisor was Matthew Rollins ("Rollins"). Throughout her time working under Rollins, Plaintiff noticed that he treated her differently than other employees. In one example, Rollins leaned uncomfortably over Plaintiff while she was at her desk and would not let her leave the area although the situation was awkward and unwelcomed.

7. As part of her job, Plaintiff travelled frequently across the State of Oklahoma to inspect flood plains, and at times she would travel with Rollins.

8. Rollins would frequently ask Plaintiff out for dinner during overnight trips required by the work needing to be completed. Plaintiff was uncomfortable with such situations and would decline the invitations as often as she could; many

times, she would save food from lunch as an excuse to decline the invitation. However, Rollins was unhappy when she declined, and Plaintiff would notice the change in his attitude and supervision style when Plaintiff declined the invite.

9. In fact, on one occasion, Rollins threw away Plaintiff's leftover food to ensure that Plaintiff would have to have dinner with him.

10. In February 2015, when the events started to increase and Plaintiff's employment was getting more uncomfortable, she began to document the actions Rollins was taking against her that were leading to a hostile work environment.

11. In early March 2015, Plaintiff and Rollins were driving on county roads in Beckham County. To perform her job and identify structures located in the floodplain, Plaintiff utilized a paper map on her lap to review while Rollins was driving. Rollins also had an iPad on his dash which he could use to navigate as well.

12. At a time while Plaintiff and Rollins were on a vacant county road, Rollins would stop the vehicle and, instead of using his iPad, he leaned his hand over to the map on Plaintiff's lap and moved his finger south on the map, up Plaintiff's leg toward her inner thigh and towards her vagina. Plaintiff told him not

to touch her map. Yet, Rollins repeated his action two (2) additional times.

13. Rollins repeated this action the following day, and Plaintiff physically worked to pull the map up to prevent him from essentially touching her inner thigh, and to stop the harassing behavior. On the final occasion, Rollins used enough pressure on the map, and ultimately Plaintiff's leg, so that Plaintiff could not even lift the map.

14. Plaintiff made it known to Rollins that he should not touch the map and without specifically stating it, she made it clear that she did not approve of Rollins touching her leg through the map.

15. Although they were finished in Beckham County, they did not return to the office in Oklahoma City and instead stayed at a hotel before going to Kingfisher County for more work.

16. Rollins' attitude changed following Plaintiff's rebuke of his advances. He was noticeably quiet the remaining of the trip, and one morning, during the time that the vehicle was usually out in front of the hotel to leave, it was gone, making it appear that Rollins left the hotel without Plaintiff. Rollins later returned claiming he went to Wal-Mart.

17. Plaintiff and Rollins left to attend a workshop for work, and Rollins continued to act strangely. Different people noticed and asked Plaintiff about Rollins' behavior. At one point, a board member on the Oklahoma Floodplain Managers Association ("OFMA") came to Plaintiff to ask, "What is going on with Matt?" Plaintiff started crying as she told him some of the details of what happened.

18. Because Rollins was so upset, Plaintiff asked to drive the vehicle home after the workshop. She was afraid that Rollins was going to have an accident with the way he was acting. From that point on, Rollins completely ignored Plaintiff or treated her very rudely if he had to speak to her.

19. In April 2015, Plaintiff discussed Rollins' attitude with his supervisor, Gavin Brady ("Brady"). Plaintiff generally told him that things were tense between the two (2) of them, but did not tell him specifically what was going on, except that Rollins was not communicating with Plaintiff. Brady indicated that he would talk to Rollins and try to set up a meeting between all of them.

20. However, after talking to Rollins, Brady never set up a meeting to resolve any issues, and only communicated with Plaintiff when she sought him out to learn updates on trying to resolve the situation.

21. Prior to these events, Plaintiff was told that she would be in line to possibly move into Rollins' position since Brady was retiring soon, and it appeared that Rollins was going to take his job.  Plaintiff was even performing many of the job duties Rollins was performing.

22. However, prior to her termination and after she rebuffed Rollins' advances, Plaintiff's duties were modified and tasks were removed from her that were more consistent with the Specialist position.

23. Plaintiff was then terminated on April 24, 2015.  Although she was not originally told the reasons for the separation, it was later learned that Defendant claimed that Plaintiff was terminated because of "performance issues and chronic tardiness."

24. Plaintiff's evaluations were above satisfactory and she was never counseled or written up for poor performance or chronic tardiness.

25. Plaintiff filed her Charge of Discrimination on May 27, 2015.

26. Plaintiff received her Notice of Right to Sue on or around September 30, 2016.

## CAUSE OF ACTION – VIOLATION OF TITLE VII OF THE 1964 CIVIL RIGHTS ACT, AS AMENDED, FOR GENDER DISCRIMINATION – QUID PRO QUO HARASSMENT

27.     Plaintiff incorporates by reference paragraphs 1 through 26 as though set forth in full herein.

28.     At all relevant times, Plaintiff is a female, and a member of a class protected by Title VII of the 1964 Civil Rights Act, as amended.

29.     Defendant was, and now is an "employer" within the meaning of Title VII of the 1964 Civil Rights Act, as amended, and did and now does employ more than 15 persons.

30.     Under the applicable sections of Title VII, it is an unlawful employment practice for an employer to discriminate against any individual with respect to the terms, conditions, or privileges of her employment, because of her sex or gender.

31.     Moreover, it is unlawful to limit, segregate, or classify employees that would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of that individual's sex or gender.

32. Plaintiff was harassed and treated differently because of her gender and because she rebuffed the advances of her male supervisor, as set forth herein. Ultimately, Plaintiff's job benefits were conditioned on her submission to Rollins' sexually advancing conduct, and she was terminated when she refused to submit to the conduct.

33. As Plaintiff's supervisor, Rollins had the authority to materially affect the terms and conditions of Plaintiff's employment. During Plaintiff's employment, as set forth herein, Rollins subjected Plaintiff to a demand for sexual favors, and her rejection resulted in tangible job detriments, including her termination.

34. The reasons given for Plaintiff's termination were not worthy of belief and served to mask the true reason for Plaintiff's termination as explained herein.

35. As a direct and proximate result of Defendant's discriminatory treatment and actions herein above alleged in violation of Title VII of the 1964 Civil Rights Act, as amended, Plaintiff has suffered, and is now suffering, and will continue to suffer, irreparable injury and economic loss, as well as damages for emotional distress, mental anguish, embarrassment, humiliation, and loss of enjoyment of life. Plaintiff seeks all the relief afforded by Title VII of the 1964 Civil

Rights Act, as amended.

36.     Plaintiff has complied with all the administrative requirements prior to filing this action, and this action has been filed within ninety (90) days from the issuance of the letter by the Equal Employment Opportunity Commission.

WHEREFORE, Plaintiff demands and prays against Defendant as follows:

(1) That a judgment be entered declaring that Plaintiff was unlawfully discriminated against by Defendant in violation of Title VII of the 1964 Civil Rights Act, as amended.

(2) That Defendant be ordered to make Plaintiff whole by providing back pay, front pay, compensation for mental pain and suffering and emotional distress, sleeplessness, anxiety, humiliation, embarrassment, injury to reputation, and loss of enjoyment of life, and all other remedies authorized by Title VII of the 1964 Civil Rights Act, as amended, including, but not limited to, punitive damages.

(3) That Defendant is enjoined from discriminating against Plaintiff in any manner that violates Title VII of the 1964 Civil Rights Act, as amended.

(4) That Plaintiff be awarded her costs and expenses of this litigation, including reasonable attorney's fees, and expert witness fees; and

(5) That Plaintiff be granted such other legal and equitable relief as the Court may deem just and proper and in compliance with Title VII of the 1964 Civil Rights Act, as amended.

BROCKMAN LAW, PLLC

  s/Scott F. Brockman
Scott F. Brockman, OBA#19416
10601 S. Western, Suite 117
Oklahoma City, Oklahoma 73170
(405) 703-4429
(405) 703-4499 (fax)
scott@brockmanlawpllc.com
ATTORNEY FOR PLAINTIFF

JURY TRIAL DEMANDED
ATTORNEYS' LIEN CLAIMED