**CASE NO.: 16-cv-1452-W**

**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

**KASIE STAMBAUGH,**

**Plaintiff,**

**v.**

**OKLAHOMA WATER RESOURCE BOARD,**

**Defendant.**

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT**

**DIXIE L. COFFEY, OBA# 11876**
**Assistant Attorney General**
**Oklahoma Attorney General's Office**
**Litigation Division**
**313 NE 21st Street**
**Oklahoma City, Oklahoma 73105**
**Telephone: (405) 521-3921   Facsimile: (405) 521-4518**

***Attorney for Oklahoma Water Resource Board***

**April 4, 2018**

## TABLE OF CONTENTS

**TABLE OF CONTENTS** ................................................................... i

**TABLE OF AUTHORITIES** ............................................................ ii

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** .................................. 1

**BRIEF PRELIMINARY STATEMENT** ................................................... 1

**STATEMENT OF UNDIPUSTED FACTS** ................................................ 4

**STANDARD OF REVIEW** ................................................................ 7

**ANALYSIS AND AUTHORITY** .......................................................... 8

**PROPOSITION I:**

> **PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CLAIM OF SEX DISCRIMINATION** ................................................................ 8

> A.  The *Prima Facie* Case for *Quid Pro Quo* Sexual Harassment .................... 8

**PROPOSITION II:**

> **PLAINTIFF HAS NOT MET HER BURDEN TO ESTABLISH A TITLE VII CLAIM OF DISCRIMINATION** ............................................... 17

> A.  Plaintiff was Terminated for Legitimate, Nondiscriminatory Reasons .... 18

> B.  The Reasons for Plaintiff's Termination were not Pretextual ................... 21

**CONCLUSION** ........................................................................... 22

**CERTIFICATE OF SERVICE** ........................................................... 24

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .......................................................................................... 7

*Branson v. Price River Coal Co.,*
853 F.2d 768 (10th Cir. 1998) ........................................................................ 21

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................... 7

*E.E.O.C. v. Horizon/CMS Healthcare Corp.,*
220 F.3d 1184 (10th Cir. 2000) .................................................................... 7, 8

*Helm v. Kansas,*
656 F.3d 1277 (10th Cir. 2011) ........................................................................ 9

*Hicks v. Gates Rubber Co.,*
833 F.2d 1406 (10th Cir. 1987) ..................................................................... 8, 9

*Luster v. Vilsack,*
667 F.3d 1089 (10th Cir. 2011) ...................................................................... 21

*Macias v. Southwest Cheese Company,*
624 F.App'x 628 (10th Cir. 2015) .................................................................... 9

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) .................................................................................. 17, 18

*Perry v. Woodward,*
199 F.3d 1126 (10th Cir. 1999) .................................................................. 17, 18

*Piercy v. Maketa,*
480 F.3d 1192 (10th Cir. 2007) ........................................................................ 8

*Pinkerton Colo. Dep't of Transp.,*
563 F.3d 1052 (10th Cir. 2009) ........................................................................ 9

*Randle v. City of Aurora,*
69 F.3d 441 (10th Cir. 1995) .......................................................................... 18

*Reeves v. Sanderson Plumbing Products, Inc.,*
120 S.Ct. 2097 (2000) ................................................................................. 17

*St. Mary's Honor Ctr. v. Hicks,*
509 U.S. 502 (1993) ........................................................................ 18, 21, 22

*Tex. Dep't of Cmty. Affairs v. Burdine,*
450 U.S. 248 (1981) ................................................................................ 17, 21

*Water Pik, Inc. v. Med-Systems, Inc.,*
726 F.3d 1136 (10th Cir. 2013) ................................................................... 8

## STATUTES

OKLA. STAT. tit. 74 § 840-4.13(D) ......................................................... 4, 9, 10

42 U.S.C. § 2000e-2(a)(1) ........................................................................... 17

## RULES

Fed. R. Civ. P. 56(a) ................................................................................. 1, 7

Fed. R. Evid. 301 ........................................................................................ 17

LCvR 56 ......................................................................................................... 1

## OTHER

Merit Protection Rule 260:25-1-2 ............................................................... 10

Merit Protection Rule 260:25-11-32 ........................................................... 10

Merit Protection Rule 530:10-11-30 ............................................................. 4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) KASIE STAMBAUGH,<br><br>                     Plaintiff,<br><br>v.<br><br>(1)STATE OF OKLAHOMA, *ex rel.,*<br>OKLAHOMA WATER RESOURCES<br>BOARD, a statutory state agency,<br><br>                    Defendant. | **Case No.: 16-cv-1452-W** |

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
## AND BRIEF IN SUPPORT

Defendant, Oklahoma Water Resources Board("OWRB"), pursuant to Fed. R. Civ. P. 56(a) and LCvR 56, 1 moves this Court for summary judgment in its favor, showing the court as follows:

### BRIEF PRELIMINARY STATEMENT

Plaintiff, Kasie Stambaugh ("Plaintiff"), was terminated on April 24, 2015, due to deficiencies in her job performance, tardiness and insubordination. Refusing to accept she was not an exemplary employee at OWRB, she has sued her former employer, asserting a Title VII *quid pro quo* sexual harassment claim. [Doc. 1, pp.7-9]

Her job performance deficiencies were summarized by OWRB in its EEOC response, and included, in part:

**Reason for Termination**: Ms. Stambaugh was terminated during the probationary period of her employment with the OWRB

due to continued performance problems (e.g. repeated tardiness, insubordination in refusing to complete work assignments, refusing to use approved processes, scheduling unauthorized meetings…, chronically refusing to respond to email communications…)" … "It became obvious that she did not want to follow instructions… and would not take responsibility for her insubordination.

*OWRB Response to Stambaugh EEOC Charge of Discrimination*, at OAG 70, attached as Exhibit 1.

After discussions with his supervisors about problems with Plaintiff, Plaintiff's supervisor, Matt Rollins, submitted to his supervisors a very detailed description of numerous performance problems he was having with Plaintiff. *Memo from Matt Rollins to J.D. Strong, Executive Director, and Julie Cunningham dated 4/23/2015, re: Stambaugh Work Performance*, attached as Exhibit 2. Ms. Stambaugh was subsequently terminated during the probationary period of her employment with the OWRB due to these continued performance problems.

After Plaintiff was told of her termination, Plaintiff voiced a litany of complaints: that her supervisor, Matt Rollins, "… won't talk to me or answer my emails", "he has done bad things", "that he touched my leg". (*Investigative Report by EEO Investigator dated 6/5/2015*, at OAG 74, attached as Exhibit 3). This was the first time Plaintiff reported Rollin's supposed sexual misconduct. As discussed in detail below, Plaintiff has multiple conflicting

versions of her *quid pro quo* claim of sexual harassment by Rollins, none of which are credible or supported by any evidence.

Plaintiff had recently complained to Rollins' supervisor, Gavin Brady, as well as other OWRB employees, of difficulties she was having working with Rollins, particularly her inability (or refusal) to communicate with him, and her inability to get along with him. Some of her complaints mirrored Rollins' criticisms of her work performance, substantiating his complaints of insubordination. Although she clearly had the opportunity, and was comfortable voicing her complaints to Rollins' supervisor, she never complained to Brady or any other OWRB employee of any alleged touching, sexual advances, or any other type of alleged sexual harassment by Rollins. *Deposition of Kasie Stambaugh*, p. 94, ln. 3-25; p. 104, ln. 8-24; p. 262, ln. 12-25, attached as Exhibit 4; *see also Deposition of Gavin Brady*, p. 29, ln. 17 – p. 35, ln. 11, attached as Exhibit 5.

Plaintiff's claim of *quid pro quo* sexual harassment is based solely upon (1) a computer incident in which she claims Rollins got too close and made her feel uncomfortable [Doc. 1, ¶6]; Rollins' repeated touching of a map which Plaintiff continued to hold in her lap [Doc. 1, ¶¶12-14]; and Rollins' unobtrusive, courteous invitations to dinner while in the field. [Doc. 1, ¶8]. Plaintiff erroneously contends these actions by Rollins were sexual advances,

her job benefits were conditioned on her submission to them, and she was terminated when she refused to submit to the conduct. [Doc. 1, ¶32].

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.     Plaintiff was hired at OWRB on May 13, 2014 as an Environmental Programs Specialist. *OWRB Request for Personnel Action*, attached as Exhibit 6.

2.     Plaintiff was supervised by Matthew Rollins. [Doc. 1, ¶ 6].

3.     New OWRB full-time employees are subject to a 12-month probationary period. In accordance with Merit Rule 530:10-11-30, all original appointments to classified positions must serve a probationary period of one (1) year unless a waiver is approved after the employee has served six months. Probationary employees are not eligible for promotion or merit increases and can be terminated at any time at will. *OWRB Handbook, 4.3,* at p. 2 *and* OKLA. STAT. *tit. 74 § 840-4.13(D)*, at p. 8, attached as Exhibit 7.

4.     Plaintiff was a probationary employee at OWRB. Plaintiff's probationary period would have ended on May 13, 2015 if she had not been terminated. *Id.*; *see also* Ex. 6.

5.     Plaintiff was frequently tardy while employed at OWRB. Plaintiff arrived to work after her start time on January 14, 2015, March 9, 2015, March 20, 2015, March 23, 2015, March 25, 2015, April 2, 2015, April 3, 2015, April

15, 2015, April 20, 2015, and April 21, 2015. On these dates, the earliest Plaintiff arrived was ten minutes after work had already began. Ex. 2, at OAG 14.

6.     Matthew Rollins met with Plaintiff multiple times to discuss her tardiness problem, including in January 2015 during her mid-year review. Rollins was assured that Plaintiff knew that her daily start time was at 8:30am. *Id.* at OAG 13.

7.     On April 6, 2015, Plaintiff was again counseled about tardiness and was offered an alternative work schedule to assist her with her tardiness problem, however, Plaintiff refused the revised schedule. *See Matt Rollins Memo dated 4/6/2015 re: Work Hours Notification,* attached as Exhibit 8.

8.     Plaintiff's supervisors had concerns about her projects, tasks, performance and her ability to meet the requirements of her position. Mr. Rollins outlined a significant number of these problems in a memo to his supervisors. (Ex. 2). Documentation revealed problems with performance, insubordination and tardiness. Ex.1, at OAG 70.

9.     Ms. Stambaugh was terminated during the probationary period of her employment with the OWRB due to continued performance problems including, but not limited to repeated tardiness, insubordination in refusing to complete work assignments, refusing to use approved processes, scheduling

unauthorized meetings, and chronically refusing to respond to email communications with her supervisor, and insubordination. *Id.; see also* Ex. 2.

10.     Plaintiff's employment with OWRB was terminated on April 24, 2015. *Letter of Termination,* attached as Exhibit 9.

11.     Plaintiff was notified of her termination by Brian Jepsen and Julie Cunningham. During this meeting, Plaintiff, for the first time, cryptically raised her allegations of Matthew Rollins sexually harassing her. Ex. 3, at OAG 74; *see also* Ex. 4, p. 104, ln. 8-24; p. 262, ln. 12-25.

12.     Plaintiff never reported any instances of alleged sexual harassment until she was terminated from the OWRB. Ex. 1, at OAG 74-76; *see also* Ex. 4, at p. 104, ln. 8-24; p. 262, ln. 12-25.

13.     Once the OWRB was notified of Plaintiff's allegations against Rollins, it took prompt action to investigate the claims by hiring an independent. Ex. 1; *see also* Ex. 3, at OAG 73; and *Deposition of Julie Cunningham,* p. 21, lns. 13-22, attached as Exhibit 10.

14.     The EEO Investigator determined that the preponderance of the evidence did not support Plaintiff's allegations that she had been sexually harassed by her supervisor Matthew Rollins. Ex. 1.

15.     Early in Plaintiff's employment, Gavin Brady was aware of Plaintiff's tardiness; later he became aware of other problems including insubordination. Ex. 5, at p. 38, ln. 19 – p. 41, ln. 16; p. 50, ln. 9 – p. 51, ln. 18.

16.     Matt Rollins recommended Plaintiff be terminated due to her work performance deficiencies, as outlined in his April 23, 2015 memo. Ex. 2; *see also* Ex. 1, at OAG 70.

17.     Matt Rollins denies he made any sexual advance to Plaintiff, and denies he recommended termination because of any refusal of such advances. Ex. 1, at OAG 68; Ex. 3, at OAG 75-76.

### STANDARD OF REVIEW

Summary judgment shall be granted when the moving party demonstrates that it is entitled to judgment as a matter of law because there is no evidence – considering the pleadings, depositions, answers to interrogatories, along with affidavits – to support the claims of the nonmoving party or that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). An issue is "genuine" only if the evidence is such that a reasonable fact finder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is 'material' if, under the governing law, it could have an effect on the outcome of the lawsuit." *E.E.O.C. v. Horizon/CMS Healthcare Corp.*,

220 F.3d 1184, 1190 (10th Cir. 2000). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Although Plaintiff is entitled to all reasonable inferences from the record, she must still marshal sufficient evidence requiring submission of the matter to the jury in order to avoid summary judgment. *Piercy v. Maketa*, 480 F.3d 1192, 1197 (10th Cir. 2007). Thus, if the Plaintiff bears the burden of persuasion on a claim at trial, then summary judgment may be warranted if (a) Defendants point out a lack of evidence to support an essential element of that claim, and (b) Plaintiff cannot identify specific facts that would create a genuine issue. *Water Pik, Inc. v. Med-Systems, Inc.*, 726 F.3d 1136, 1143-44 (10th Cir. 2013).

## ANALYSIS AND AUTHORITY

## PROPOSITION I: PLAINTIFF HAS NOT ESTABLISHED A *PRIMA FACIE* CLAIM OF SEX DISCRIMINATION

### A. The *Prima Facie* Case for *Quid Pro Quo* Sexual Harassment

"[C]ourts have consistently recognized two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." *Hicks v. Gates Rubber Co.,* 833 F.2d 1406, 1413 (10th Cir. 1987). In this case, Plaintiff has asserted only a *quid pro quo* sexual harassment claim. To survive a motion for summary judgment on her *quid pro quo* sexual harassment claim, Plaintiff must show that her "concrete employment benefits" were conditioned "on her submission to sexual conduct"

and that she was "fired when she did not comply." *Macias v. Southwest Cheese Company,* 624 F.App'x. 628, 639 (10th Cir. 2015)(quoting *Pinkerton. Colo. Dep't of Transp.,* 563 F.3d 1052, 1060 (10th Cir. 2009))(unpublished); *Hicks* at 1413. This Court has clearly stated that "the gravamen of a *quid pro quo* sexual harassment claim is that tangible job benefits are conditioned on an employee's submission to conduct of a sexual nature and that adverse job consequences result from the employee's refusal to submit to the conduct." *Hicks* at 1414. Furthermore, this Court requires a "strong causal nexus between the supervisor's harassment and the tangible employment action." *Helm v. Kansas,* 656 F.3d 1277, 1287 (10th Cir. 2011).

The evidence simply does not support Plaintiff's *quid pro quo* harassment claim, i.e. that Rollins made sexual advances toward her and then terminated her when she refused to comply.

Plaintiff was hired at the Oklahoma Water Resources Board ("OWRB") in the Floodplain Management Division as an Environmental Programs Specialist, probationary appointment, in May 2014. (Ex. 6). The rights of employees of the State of Oklahoma in their jobs is governed by the Oklahoma Personnel Act. Under the act, employees serve in a probationary status for a period of one year. OKLA. STAT. tit. 74 § 840-4.13(D). (Ex. 7, at p. 8). During the probationary period, an employee is required to "demonstrate [her] fitness for the job to which appointed by the satisfactory performance of the duties and

responsibilities of the job." *Id.* at *Rule 260:25-1-2*, pp. 4-5. The one year probationary period allows the agency to continue to evaluate new employees to determine whether the employee merits continued employment. A probationary employee is subject to termination without the right of appeal at any time during the probationary period. *Id;* Ex. 7*, at *Rule 260:25-11-32,* p. 6.

### 4.3    Probationary Period

> In accordance with Merit Rule 530:10-11-30, all original appointments to classified positions must serve a probationary period of one (1) year, unless the Appointing Authority approves waiving the remaining probationary period after the employee has served six (6) months. At the end of the probationary period, the employee shall automatically become permanent. Probationary employees are not eligible for promotion or merit increases and can be terminated at any time at will.

Ex. 7, OWRB Policy 4.3 at p. 2; *see also* OKLA. STAT. tit. 74 § 840-4.13(D), p. 7.

Plaintiff was terminated during her probationary period, on April 24, 2015, due to a variety of continued problems with her job performance, as outlined in Mr. Rollins' April 23, 2015 memorandum, and summarized in OWRB's EEOC Response, **Reason for Termination.** Ex. 1, at OAG 70; Ex. 2; and Ex. 9.

Plaintiff worked directly with supervisor Rollins on a daily basis, both in the field and in the office. Due to the nature of their work at OWRB, particularly the requisite use of computer maps and detailed computer programming, Rollins would occasionally utilize Plaintiff's computer while she

sat at her desk, to discuss work issues with her. At times, he used her mouse to point out information or perform other tasks on her computer. (Ex. 1, at OAG 68). In fact, it was common practice for employees to look at each other's computers or work on a computer together to complete projects. *Id.* Plaintiff claims that on one occasion, Rollins leaned uncomfortably over her while she was at her desk and would not let her leave the computer area. [Doc. 1, ¶6]. Yet Plaintiff never informed Rollins or anyone else at OWRB that Rollins' actions made her feel uncomfortable or that she believed he was making sexual advances towards her. [Doc. 1, ¶ 19]; Ex. 1, at OAG 69; Ex. 4, p. 104, ln. 8-24; p. 262, ln. 12-25.

As an environmental specialist in the floodplain management division, Plaintiff accompanied her supervisor on Community Assistance Visits ("CAV"), which occasionally required overnight travel to small towns and remote locations. CAVs are generally conducted by a two-person team: a driver and a navigator in one car. It is neither uncommon nor unusual for them to eat together. Often they would be in areas with few or no restaurants within walking distance. Therefore, Rollins, as a courtesy, would inquire as to whether Plaintiff wished to get dinner. (Ex. 1, at OAG 68). Rollins had been conducting CAV's for multiple years, with multiple different co-workers, and frequently included coworkers in dinner plans due to the practical necessity of the situation, as well as to be courteous. Ex. 3, at OAG 76.

During these CAV trips, OWRB employees would utilize both iPad and paper maps to assist them in their navigations to various well sites. Plaintiff claims that on one of these trips, she was using a paper map to navigate and Rollins touched the map while it was in her lap, moving his finger south on the map, up Plaintiff's leg toward her inner thigh and towards her vagina. She claims he did this three (3) times one (1) day, and three (3) times the next day. Plaintiff states that when Rollins touched her map, he did so "with pressure … where [she] could hardly lift the map off [her] lap" and proceeded to move his finger south. ([Doc. 1, ¶¶12-13]); She told the EEO Investigator that she responded by giving him "the worst look she could and he gave her a bad look back." Ex. 3, at OAG 74. There was no mention of her asking/telling Rollins to stop, or that he was making her uncomfortable.

Plaintiff's logged into her spreadsheet that she simply gave Rollins "a 'look' and he never got the hint; he did this on Monday and Tuesday,…." (Ex. 1). Even Plaintiff's Complaint admits Plaintiff never asked/directed/told Rollins not to touch her. Rather, Plaintiff alleges that she "made it known to Rollins that he should not touch the map and **without specifically stating it**, she made it clear that she did not approve of Rollins touching her leg through the map." [Doc. 1, ¶14]. Yet Plaintiff's latest version is that when she finally told Rollins not to touch her map, after permitting it six times, he did not do it again. Ex. 4, at p. 193, ln. 9-19.

While Plaintiff complained to individuals in management at OWRB about her inability to get along with her supervisor, and specifically their communication difficulties, not once did she complain that Rollins was acting inappropriately towards her, that he inappropriately touched the map in her lap, or that she felt she was being sexually harassed. (Ex. 1; *see also* Ex. 4, at p.104, ln. 8-24; p. 262, ln. 12-25). Plaintiff's complaints about Rollins focused solely on their communication issues and personality conflicts. [Doc. 1, ¶ 19]; Ex. 5, p. 29, ln. 23 – p. 35, ln. 11). Certainly Plaintiff had not only the opportunities, but the audience, to report this conduct if it truly occurred. Yet the first time Plaintiff brought up any concerns about Rollins harassing her was in her termination meeting, after she was told she was being terminated. (Ex. 1, at OAG 69; *see also* Ex. 3, at OAG 76, ¶10). Even then, she gave only vague illusions to how she claimed Rollins harassed her, saying things such as "he did bad things", and "he touched my leg"[1] *Id.* at OAG 74. Once OWRB was notified about these concerns, it took prompt, immediate action to investigate Plaintiff's claims by hiring an EEO Investigator. The investigation resulted in a finding that no sexual harassment had occurred. (Ex. 3, at OAG 79-80; *see also* Ex. 10, p. 21, ln. 13-22).

---

[1] This is clearly untrue, even based upon Plaintiff's own testimony, since she does not claim Rollins ever touched her leg – only that he touched the map sitting on top of her leg.

During her time at OWRB, Plaintiff's supervisors became concerned about Plaintiff's inability to adequately perform her duties, her habitual tardiness, and behavioral issues. (Ex. 2). Plaintiff attempted to conduct meetings and site visits without permission from her supervisor, tasks which Plaintiff did not have the authority to do alone. Plaintiff's supervisors had noted she was insubordinate, and she would refuse simple orders and requests. *Id.* During her mid-year review, Plaintiff's supervisors discussed Plaintiff's start time with her and impressed the importance of arriving to work on time. *Id.* at OAG 13. Plaintiff continued to be tardy after this meeting. As Plaintiff had failed to correct her tardiness issues, Rollins decided to discuss the issue with her again on April 6, 2015. (*Id.* at OAG 12). Rollins clarified that Plaintiff understood her daily start time was 8:30am Furthermore, Rollins offered to adjust Plaintiff's start time to later in the morning, which Plaintiff refused. (*Id.* at OAG 14). Eventually, due to Plaintiff's multiple performance issues, OWRB decided to utilize its option to terminate her while she was still a probationary employee. (Ex. 9; Ex. 10, at p. 50, ln. 4 – p. 52, ln. 20).

After Plaintiff's termination, OWRB immediately requested an investigation into Plaintiff's allegations of sexual harassment. The EEO Investigator determined that the preponderance of the evidence did not support Plaintiff's claims of harassment, nor that she was terminated due to any discriminatory reason. (Ex. 3, at OAG 79-80).

The reasons for Plaintiff's termination are plain and simple – her performance problems -chronic tardiness, inability to properly perform and/or complete work assignments, and insubordination. (Ex. 1, at OAG 70). These legitimate business reasons for Plaintiff's termination were in no way related to unlawful sexual discrimination or Rollins' behavior towards Plaintiff. Rather, as clearly documented, Plaintiff was terminated for her own failures. Plaintiff was continuously tardy for work, with at least ten documented instances of tardiness after it became apparent that tardiness was a continuous problem. (Ex. 2, OAG 12-14). Furthermore, Plaintiff's personnel file is replete with other instances of her insubordination. Plaintiff refused to comply with simple requests from her supervisor (*Matt Rollins Memo dated 4/20/2015 re: Permitting Presentation Request for FPM 101 Workshop 04/20/2015,* attached as Exhibit 11); she scheduled CAVs without gaining her supervisor's approval (Ex. 2, at OAG 14-15); she failed to organize locations for OWRB's yearly training as instructed (Ex. 2, at OAG 15-16); she refused to allow her supervisors to review her presentation materials and included unauthorized materials in her presentation (Ex. 2, at OAG 16); she contradicted her more experienced supervisor in meetings with city officials (*Matt Rollins Memorandum dated 11/3/2014, re: City of Piedmont CAV Meeting,* attached as Exhibit 12; *see also Matt Rollins Memorandum dated 4/3/2015, re: Proper Documenting of CAV Field Visit,* attached as Exhibit 13);

and she questioned and complained about OWRB's policy of meeting with local officials in person to discuss CAV work (*Matt Rollins Memorandum dated 11/3/2014, re: Cherokee County FPB Meeting*, attached as Exhibit 14). While any singular failure might be excusable, Plaintiff refused to acknowledge and correct her deficiencies. Therefore, as a result of her multitude of infractions, Plaintiff was terminated.

Plaintiff recognized her working relationship with Rollins became strained early in her employment, was not due to any *quid pro quo* sexual harassment, and began well before Rollins' alleged sexual advances in mid-March.

Plaintiff cannot prove her *prima facie* case because she cannot establish the requisite causal connection between her termination and any alleged sexual harassment by Rollins. Her supervisor began to document Plaintiff's performance problems as early as November 2014. From that point on, Plaintiff's performance issues continued. *Id.* It is nonsensical to claim that these issues were connected to alleged sexual advances, i.e. Rollins' leaning over Plaintiff at her computer on the one occasion she described, touching her map while seeking directions on a work trip, or Rollins' inclusion of Plaintiff in dinner plans. Rather, Rollins performed his duty as a supervisor in documenting the multiple issues with Plaintiff's performance. Then, when it became clear that Plaintiff was not well suited to her position at OWRB,

particularly her lack of respect for her supervisor and her repeated insubordination, she was terminated. Plaintiff cannot prove her *prima facie* case of *quid pro quo* sexual harassment.

## PROPOSITION II:   PLAINTIFF HAS NOT MET HER BURDEN TO ESTABLISH A TITLE VII CLAIM OF DISRCIMINATION

Title VII of the Civil Rights Act of 1964 makes it unlawful to discriminate against an employee based on their sex:

It shall be an unlawful employment practice for an employer –

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . .

42 U.S.C. § 2000e-2)(a)(1).

Initially, Plaintiff bears the burden of proving a *prima facie* case of sex discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Perry v. Woodward*, 199 F.3d 1126, 1135 (10th Cir. 1999). **At every stage**, Plaintiff retains the burden of persuasion under Title VII that she was intentionally discriminated against. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *see also Reeves v. Sanderson Plumbing Products, Inc.*, 120 S.Ct. 2097, 2016 (2000); and Fed. R. Evid. 301.

If Plaintiff "establishes her *prima facie* case, a rebuttable presumption arises that the defendants unlawfully discriminated against her." *Perry*, 199

F.3d 1135 (citation omitted). The burden then shifts to the State to "articulate a legitimate, nondiscriminatory reason for the adverse employment action suffered by the plaintiff." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802). This is only a burden of production. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993). If such reason is produced, then the presumption created by a *prima facie* case is rebutted and falls away. *Id.* at 507. Once the defendant articulates any valid reason, "the plaintiff can avoid summary judgment ***only*** if she is able to show that a **genuine** dispute of material fact exists as to whether the defendant's articulated reason was pretextual." *Perry*, 199 F.3d at 1135 (citing *Randle v. City of Aurora*), 69 F.3d 441, 451 (10th Cir. 1995)), or not the true reason, *St. Mary's*, 509 U.S. 508.

## A.   Plaintiff was Terminated for Legitimate, Nondiscriminatory Reasons.

Even if the Court assumes Plaintiff could prove her prima facie case, summary judgment is appropriate because Plaintiff was terminated for legitimate reasons, not because of Plaintiff's refusal of sexual advances. Plaintiff was terminated for the good of OWRB due to her chronic tardiness, concerns about inadequately performing her duties, insubordination to her supervisors, and behavioral issues. Exs. 2 and 9.

On January 14, 2015, when Plaintiff arrived at a workshop twenty (20) minutes late, Rollins asked her about her tardiness. She evaded the question

and walked away. (*See Matt Rollins Memorandum dated 1/14/2015, re: Work Hours Observation,* attached as Exhibit 15). On January 30, 2015, when Plaintiff was notified that her supervisors had noticed she was consistently arriving at work after her designated start-time, she informed her supervisors that she was carpooling with an individual who arrived at work a full half-hour after Plaintiff was expected to arrive. (Ex. 2, at OAG 13). Plaintiff could have requested a revision to her start time, but she refused. After this meeting, Plaintiff was observed arriving late to work on at least nine (9) more occasions. *Id.* at OAG 14.

Plaintiff was insubordinate and disrespectful to her supervisors and those she encountered through her work duties. On November 3, 2014, in a meeting with the Cherokee County Floodplain Board, Plaintiff stated that a study would need to be done multiple times even though her supervisors had already informed her that it was unnecessary. Plaintiff also complained about how traveling was inefficient and the meeting could have been conducted over the phone. (Ex. 14). On November 25, 2014, in a meeting with the City of Piedmont, Plaintiff argued about where the city limits were, even after she was informed by multiple individuals that she was incorrect. (Ex. 12). On March 23, 2015, Plaintiff scheduled and conducted a CAV without notifying Rollins, which was beyond her authority at OWRB. Furthermore, the CAV had already been completed and was being reviewed and conducted by Gavin Brady,

Rollins' supervisor. When Plaintiff's supervisors reviewed her work on this CAV, it was found to be incomplete and deficient. (Ex. 2, at OAG 15). On March 4, 2015, Plaintiff was given the responsibility of contacting locations throughout Oklahoma to schedule times for OWRB's 2015-2016 training. Plaintiff was given until April 6, 2015 to complete this assignment and failed to do so. At no point did Plaintiff notify her supervisors or anyone in her department that she did not have enough time or was struggling to complete her assignment. *Id.* at OAG 15-16.

Plaintiff's supervisors had also attempted to have Plaintiff become more active in the workshop portion of OWRB's duties. Plaintiff was instructed to prepare a presentation for an upcoming workshop. Plaintiff was given approximately one month to prepare the presentation and deliver it to her supervisors for review. Plaintiff never gave her supervisor the presentation to review before the workshop. During her presentation, Plaintiff gave incorrect information to the attendees and included unapproved content in her presentation. (Ex. 2, at OAG 16). After her presentation, Plaintiff was asked to email her presentation to her supervisor, which she refused to do. *Id.*

Plaintiff's personnel file was replete with instances of her unsatisfactory, insubordinate performance. Management of OWRB used this information to determine that Plaintiff's employment needed to be terminated for the good of the agency. Therefore, while Plaintiff was still a probationary employee,

OWRB properly utilized its option to terminate Plaintiff. OWRB's decision to terminate Plaintiff was made for non-discriminatory reasons, done in good faith, and done for legitimate business reasons.

## B. The Reasons for Plaintiff's Termination were not Pretextual

Once a defendant presents adequate evidence of legitimate, nondiscriminatory reasons for its actions, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253; *see also St. Mary's*, 509 U.S. at 510-11 (holding presumption of discrimination disappears once defendant carries its burden of production). '[M]ere conjecture that [an] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.'" *Id.* (quoting *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1998).

"In determining whether the proffered reason for a decision was pretextual, we examine the facts as they appear *to the person making the decision*" not "the plaintiff's subjective evaluation of the situation." *Luster v. Vilsack*, 667 F.3d 1089, 1093 (10th Cir. 2011) (emphasis in original) (internal quotation marks and citation omitted). "But a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false,

and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).

Plaintiff has no evidence of pretext. OWRB documentation clearly shows Plaintiff's job deficiencies as a probationary employee were a significant problem. Plaintiff was consistently tardy, extremely insubordinate to her supervisors, and refused to comply with simple requests or assignments that were given to her. Plaintiff's supervisors, including Rollins and Brady, discussed the issues concerning her performance with her; yet, Plaintiff failed to change her ways. Instead, she complained to others that Rollins would not speak to her, and her insubordination increased. Due to these continuous performance issues, OWRB was left with no alternative but to terminate Plaintiff. OWRB's termination of Plaintiff was non-discriminatory, done in good faith and for legitimate business reasons. Plaintiff was terminated for her consistent failure to meet OWRB's expectations of its employees. Plaintiff cannot prove her claim of *quid pro quo* sexual harassment.

## CONCLUSION

As a probationary employee, Plaintiff could be terminated at will, and was not entitled to all of the rights and privileges of a permanent employee. Ms. Stambaugh was terminated during the probationary period of her employment with the OWRB due to multiple job performance issues, including her chronic tardiness, inadequately performing her duties, insubordination to

her supervisors, and behavioral issues. There is no evidence, and no merit to Plaintiff's contention that Rollins' actions were sexual advances, that her job benefits were conditioned on her submission to them, and she was terminated when she refused to submit to the conduct.

Plaintiff's allegations lack even a semblance of credibility.  Plaintiff cannot prove her claim of quid pro quo sexual harassment. For the reasons set forth above, Defendant respectfully requests this Court grant its Motion for Summary Judgment.

Respectfully submitted,

/s/Dixie L. Coffey
**DIXIE L. COFFEY, OBA #11876**
Assistant Attorney General
Oklahoma Attorney General's Office
Litigation Division
313 NE 21st Street
Oklahoma City, OK 73105
Telephone:  405.521.3921
Facsimile:  405.521.4518
Email:      dixie.coffey@oag.ok.gov
*Attorney for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 4th day of April 2018, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Jonathan M. Irwin
Ward & Glass, LLP
1601 36th Ave., NW, Ste. 100
Norman, OK 73072
Email: jonathan@wardglasslaw.com
*Attorneys for Plaintiff*

/s/Dixie L. Coffey
Dixie L. Coffey